# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY SALVI, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 18 C 5041 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

On July 24, 2018, pro se petitioner Gregory Salvi filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] For the reasons stated below, the Court denies Salvi's § 2255 motion and declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2). Civil case terminated.

**Background**

On April 24, 2017, Salvi was charged in a superseding information with possessing with intent to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. § 846 (Count 1), and using a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2). The next day, Salvi waived indictment by grand jury and entered a guilty plea pursuant to a written agreement to both counts of the superseding information.

In his plea agreement, Salvi admitted that while employed as a police detective for the Melrose Park, Illinois Police Department in the spring and summer of 2014, he obtained a kilogram of cocaine that was stolen from the department's evidence room, showed the stolen kilogram of

---

[1] The Honorable Amy J. St. Eve presided over Salvi's criminal matter, 15-cr-0189. Salvi filed the present § 2255 motion after Judge St. Eve became a Circuit Court Judge on the United States Court of Appeals for the Seventh Circuit.

cocaine to an individual and a confidential informant ("CI"), and offered to sell the cocaine to the CI. Salvi then sold it to another individual for cash. He further admitted that in November and December of 2014, he stole narcotics from the police department's evidence room and sold it to two CIs.

In spring of 2015, Salvi offered to transport kilogram quantities of cocaine using his position as a law enforcement officer to disguise the transportation of the narcotics. On April 9, 2015, while on duty, armed with a handgun, and driving his police car, Salvi went to a storage locker facility in Hanover Park, Illinois, where he planned to obtain cocaine for transportation. At the storage locker, Salvi met with one of the CIs and an undercover officer ("UC") posing as a narcotics courier. At that time, the UC and Salvi removed five brick-shaped packages from a concealed compartment inside the UC's vehicle and placed them into a bag, which Salvi took to his police car. Salvi stated that he intended to distribute the five brick-shaped objects, which he believed to be five kilograms of cocaine.

As part of his written plea agreement, Salvi waived his right to challenge his conviction and sentence on direct appeal and under 28 U.S.C. § 2255:

> [D]efendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under 28 U.S.C. § 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in law[.]

(15-cr-0189, R. 65, 4/25/17 Written Plea Agreement, ¶ 24(c).) At his change of plea hearing, the Court reaffirmed that Salvi read and understood that he had waive his right to appeal his constitutional, statutory, and equitable challenges on direct appeal or in a § 2255 motion. (*Id.* ¶ 21; R. 95, 4/25/17 Plea Tr., at 26-27.)

During his plea colloquy, Salvi informed the Court that he had enough time to talk to his attorney and was satisfied with his attorney's advice and efforts on his behalf. He confirmed that he

2

had read the plea agreement, had discussed it with his attorney, his attorney had answered his questions about the plea to his satisfaction, and he had no questions about the plea agreement. Salvi further stated on the record that he understood that the maximum term of imprisonment the sentencing court could impose was up to life in prison, and that he was subject to five-year mandatory minimum sentences on both Counts 1 and Count 2 for a total ten-year mandatory minimum sentence. He explained that he had not been forced or threatened into pleading guilty and no promises had been made to induce him to plead guilty. He understood that the sentencing court would have the final say regarding his sentence.

The Court conducted Salvi's sentencing hearing on July 26, 2017. Salvi stated that he had no comments, corrections, or objections to any of the information in the Presentence Investigation Report. He further stated:

> I first want to apologize to you, apologize to the government for things that I did during this case. Mostly I want to apologize to my family, my kids and my wife. I don't really know what happened. I don't know how I lost my way. I know I never meant to hurt anybody. I've tried for the two-and-a-half years I've been out to show everybody who I was and who I am. I tried to show Pretrial by being at home every time and never having a problem with them.
>
> …
>
> I hope that your sentence will be [the] minimums. I don't know. I tell you, though, I'll go in there and do what I got to do and get back into society, and you will never hear from me again. It's not who I want to be. I just want to live out the rest of my life with my children and their kids. And I am sorry.

(15-cr-189 R. 96, 7/26/17, Sent. Hr'g. Tr., at 27.)

The Court sentenced Salvi to 72 months in prison on Count 1, which was below the sentencing guideline range, and 60 months in prison on Count 2, to be served consecutively, for a total term of 132 months. Salvi, having waived his right to appeal in his written plea agreement, did not file a notice of appeal.

**Legal Standard**

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). To obtain relief under § 2255, a petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States, the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Swanson v. United States,* 692 F.3d 708, 714 (7th Cir. 2012) (citation omitted).

**Discussion**

*Waiver*

Construing his pro se allegations liberally, *see Chronis v. United States*, 932 F.3d 544, 554 (7th Cir. 2019), Salvi argues that FBI agents entrapped him, fabricated a case against him, and framed him for crimes he did not commit. He further asserts that his criminal complaint was defective and that his § 924(c) conviction was in error because he was a police officer, and thus was entitled to carry a firearm.[2] Salvi also takes issue with his below-guidelines sentence, including that the Court breached the plea agreement because it sentenced him above the mandatory-minimum sentence of ten years.

In his written plea agreement, Salvi waived his right to challenge his conviction and sentence on direct appeal and in a § 2255 motion. The only claims excepted from his waiver included ineffective assistance of counsel claims, involuntariness claims, and claims based on changes in the law. In his § 2255 motion, Salvi makes un-waived Sixth Amendment ineffective assistance of counsel claims that the Court now considers.

---

[2] Salvi's arguments that his conviction for possession with intent to distribute cocaine is not a "crime of violence" under the elements clause of § 924(c) and that the Supreme Court invalidated the residual clause of § 924(c) are of no moment because his firearm conviction was in relation to a drug trafficking crime. 18 U.S.C. § 924(c)(1)(A).

4

*Sixth Amendment Claims*

Salvi first asserts that his counsel and the Assistant United States Attorney who prosecuted him were "best friends" and "long term friends and partying/drinking buddies." He further explains, "[i]t was a solid relationship that went way beyond what was known in the Court. There were several conflict of interest violations but neither attorney cared to report it or bring it to the court's attention." Salvi also asserts that his counsel and the prosecutor knew that the drugs seized in April 2015 were fake, but did not tell the Court. After a careful reading of Salvi's § 2255 motion, affidavit, and reply brief, he does not provide any further details about this conflict, including which Assistant United States Attorney assigned to his case was friends with his defense attorney. Salvi's first ineffective assistance of counsel claim thus fails.

"The Sixth Amendment right to counsel includes the right to conflict-free counsel." *United States v. Smith*, 771 F.3d 1045, 1047 (7th Cir. 2014) (per curiam); *see also Strickland*, 466 U.S. at 688 ("Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest."). "To establish a violation of the Sixth Amendment right to conflict-free counsel, the defendant 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *United States v. Lewisbey*, 843 F.3d 653, 657 (7th Cir. 2016) (citation omitted). "The mere possibility of a conflict is 'insufficient to impugn a criminal conviction.'" *Id.* (citation omitted).

Here, Salvi's conclusory statements made without any specific details show, at best, a "mere possibility of a conflict." *Griffin v. McVicar*, 84 F.3d 880, 887 (7th Cir. 1996) ("A mere possibility of a conflict is not sufficient to violate the Sixth Amendment."). There is no indication from the record that defense counsel's and the unnamed prosecutor's friendship had any impact on counsel's representation of Salvi. Salvi's patently incredible arguments made in his reply brief do not save the day, especially because he failed to sign his reply brief under penalty of perjury. *See Weddington v.*

5

*Zatecky*, 721 F.3d 456, 464 (7th Cir. 2013) (motion, petition, or brief signed under penalty of perjury considered affidavit).

Next, Salvi argues that his attorney tricked him and that counsel should have known about the FBI entrapment and that the drugs involved in the entrapment were fake. He also makes conclusory, unsubstantiated allegations that his counsel failed to investigate or call witnesses, present evidence in connection with his case, or file motions to suppress the superseding information. The Seventh Circuit has "repeatedly and consistently held that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'" *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) (citation omitted); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) ("Mindful that pro se pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed," the court "must be able to discern cogent arguments in [a litigant's] brief, even one from a pro se litigant."). As the Seventh Circuit teaches, when a pro se litigant fails to make cogent, specific arguments, the Court "cannot fill the void by crafting arguments and performing the necessary legal research" for the pro se litigant. *Id.*

In his pro se § 2255 motion and reply brief, Salvi explains that he was "assiduously trained" to be a law enforcement officer and was a police officer for 18 years. As an educated, experienced police officer, Salvi should understand that his vague and conclusory assertions do not provide the Court with enough information to effectively evaluate his ineffective assistance of counsel claims. Moreover, his vague and palpably incredible claims do not provide a sufficient basis for an evidentiary hearing in this matter. *Spiller v. United States*, 855 F.3d 751, 754 (7th Cir. 2017). Salvi's ineffective assistance of counsel claims therefore fail.

*Certificate of Appealability*

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability.

*See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See id.* at 336; *Klikno v. United States*, 928 F.3d 539, 547 (7th Cir. 2019). Under this standard, Salvi must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Because Salvi has not demonstrated that reasonable jurists would disagree that the Court should have resolved his non-waived arguments differently, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Conclusion**

For these reasons, the Court denies petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2). Civil case terminated.

SO ORDERED

_____

Sharon Johnson Coleman
United States District Judge

DATED: 10/4/2019